**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**GEMARION LEWIS** **PLAINTIFF**

**v.** **Civil No. 1:26cv217-HSO-BWR**

**EPIC GAMES, INC. et al.** **DEFENDANTS**

# MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT SONY INTERACTIVE ENTERTAINMENT LLC'S MOTION [19] TO COMPEL ARBITRATION AND STAY PROCEEDINGS

In this action brought by Plaintiff Gemarion Lewis against multiple video-game companies, Defendant Sony Interactive Entertainment LLC has filed a Motion [19] to Compel Arbitration and Stay Proceedings. *See* Mot. [19]; Mem. [20]; *see also* Am. Compl. [4]. Plaintiff did not file a response. Defendant's Motion [19] should be granted.

## I. BACKGROUND

This case arises out of a product liability action filed by Plaintiff Gemarion Lewis ("Lewis" or "Plaintiff") against Defendants Sony Interactive Entertainment LLC ("SIE" or "Defendant"), Epic Games, Inc., Microsoft Corporation, and Mojang AB (collectively, "Defendants"). Lewis alleges that he suffers, and has suffered, from mental, physical, and economic injuries due to an addiction to Defendants' video-game products, and that Defendants intended and expected their products to cause consumer addiction. *See* Am. Compl. [4] at 3.

The merits of Lewis' claims have not yet been beta-tested, as SIE brought its Motion [19] to Compel Arbitration and Stay Proceedings before an answer was filed by any defendant. SIE contends that in order to use its products and the products of the other Defendants in this case in the manner alleged by Plaintiff's operative Amended Complaint [4], Lewis necessarily agreed to the PlayStation System Software License Agreement ("SSLA"), which includes an arbitration clause, *see* Mem. [20] at 3-5, and the PlayStation Terms, which also include an arbitration clause, *see id.* at 6-7, 9-10, and that the latter arbitration clause covers third-party services,[1] *id.* at 9. SIE's Memorandum [20] offers copious detail on how the SSLA and PlayStation Terms are presented to PlayStation users, and that users must accept the Agreement and Terms in order to access the products that allegedly caused Lewis' harms. *See id.* at 3-10. The Memorandum [20] also lists six PlayStation accounts that SIE represents constitute all accounts Lewis has created (to their knowledge), and all of which accepted the SSLA and PlayStation Terms (Lewis himself did not allege any facts concerning his PlayStation accounts). *See id.* at 11-14. Lewis did not file a response to the Motion [19] and so has not attempted to refute any of SIE's asserted facts or arguments.[2]

---

[1] Defendant SIE, as the owner of the PlayStation video-game service, provided the platform on which Plaintiff Lewis accessed the "third-party" video games of the other Defendants— "Minecraft," owned and developed by Microsoft Corporation and Mojang AB, and "Fortnite," owned and developed by Epic Games, Inc. *See* Am. Compl. [4] at 3, 23-24, 29, 34. So, if the PlayStation Terms include a binding arbitration provision that covers SIE's products *and* third-party services, that clause *could* send Plaintiff's claims against *all* Defendants to arbitration, not just SIE's. Microsoft, Mojang, and Epic Games have not yet moved to compel arbitration, however. Only SIE has.

[2] Plaintiff's Amended Complaint [4] does preemptively assert that any contracts Lewis entered with Defendants are unconscionable, and/or are unenforceable contracts of adhesion. Am. Compl. [4] at 38. Those arguments will be addressed.

## II. DISCUSSION

### A. Legal Standard

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). The FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Parrott v. Int'l Bancshares Corp.*, 167 F.4th 728, 734 (5th Cir. 2026) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "[T]here is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Id.* (citation omitted).

"Enforcement of an arbitration agreement involves two analytical steps." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). The first is "whether the parties entered into any arbitration agreement at all," and the second is whether the claim brought by the plaintiff "is covered by the arbitration agreement." *Id.* However, "where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Id.* "Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator." *Id.* at 202. "Thus, a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Id.* (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69, (2010)). In accordance with

*Kubala*, a court "look[s] first to whether there is an agreement to arbitrate and second to whether that agreement contains a valid delegation clause." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 745 (5th Cir. 2018).

When assessing whether an agreement to arbitrate was formed, "courts . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). And where the validity of a choice-of-law provision has not been challenged, it governs as a matter of contract interpretation. *Finley v. AmeriCredit Fin. Servs., Inc.*, No. 1:25CV335-LG-BWR, 2025 WL 3764015, at *3 (S.D. Miss. Dec. 30, 2025), *aff'd*, No. 26-60010, 2026 WL 2188184 (5th Cir. July 29, 2026) (citing *Edwards*, 888 F.3d at 745).

B. Analysis

Here, SIE has adduced competent evidence of an agreement to arbitrate,[3] *see, e.g.*, Current PlayStation Terms [19-2] at 24-25; Current PS4 SSLA [19-15] at 7-8, and of a valid delegation clause, *see, e.g.,* Current PlayStation Terms [19-2] at 23, 24-25; Current PS4 SSLA [19-15] at 7-8. Lewis has offered no rebutting evidence. Accordingly, the Court applies the steps outlined in *Kubala* to determine whether Lewis' claims against SIE should be sent to arbitration. 830 F.3d at 201-02.

[3] SIE filed exhibits for every version of the PlayStation Terms, and of the SSLA for both the PS4 and PS5, that have existed since Lewis created his first PlayStation account in 2017. *See* Dkt. [19-2]-[19-24]. The arbitration provisions are substantively similar across all versions. *See id.*

1. There is an Agreement to Arbitrate between Lewis and SIE

When Lewis started his PlayStation 4 ("PS4")[4] for the first time, he was automatically confronted with the scrollable, full text of the PlayStation SSLA, which states at the top, in all capital letters, "PLEASE READ THIS PLAYSTATION 4 SOFTWARE LICENSE AGREEMENT ('AGREEMENT') CAREFULLY TO UNDERSTAND YOUR RIGHTS AND OBLIGATIONS." Mem. [20] at 3-4; *see also* Horne Decl. [19-1] at 3-4. The SSLA contains an arbitration provision (Section 9), which states:

> If you have a Dispute (other than one described as excluded from arbitration below) with any Sony Entity or a Sony Entity's officers, directors, employees and agents ("Adverse Sony Entity") that cannot be resolved through negotiation as required below, you and the Adverse Sony Entity must seek resolution of the Dispute only through arbitration of that Dispute according to Section 9's terms and not litigate that Dispute in court. Arbitration means that the Dispute will be resolved by a neutral arbitrator instead of in a court by a judge or jury.

Current PS4 SSLA [19-15] at 7. The SSLA further provides that:

> The term "Dispute" means any dispute, claim, or controversy between you and SIE . . . regarding use of System Software, whether based in contract, statute, regulation, ordinance, tort (including fraud, misrepresentation, fraudulent inducement or negligence), or any other legal or equitable theory, and includes the validity, enforceability or scope of this Section 9 (with the exception of the enforceability of the Class Action Waiver clause below). "Dispute" has the broadest possible meaning that will be enforced.

---

[4] Though Lewis' Amended Complaint [4] does not allege which numbered PlayStation console(s) is or are implicated by his claims, SIE's Memorandum [20] and Marc Horne's Declaration [19-1] note that the PS4 is the only PlayStation console that Lewis has ever created an account with. *See* Mem. [20] at 11-14; Horne Decl. [19-1] at 17-21. Two of his accounts have been *used* on a PlayStation 5 ("PS5"), but that does not necessitate that he viewed a PS5 SSLA himself, as someone could have accepted one on his behalf. *See, e.g.*, Current PS5 SSLA [19-21] at 3 ("You are accepting this Agreement on your behalf and on behalf of other people who access or use: (i) your PS5 system; or (ii) your PS5 system account or your account . . . associated with this PS5 system. You are responsible for other people's use of your PS5 system and for their compliance with this Agreement's terms.").

*Id.* The SSLA also articulates that the FAA and American Arbitration Association Rules ("AAA Rules") govern its interpretation, *id.* at 8, and that the SSLA provides an opportunity to opt-out of arbitration, *id.* at 7.

Further, in order to use his PS4, Lewis had to create a PlayStation account, which requires PlayStation users to accept the PlayStation Terms. *See* Mem. [20] at 6. In the process of creating his account, Lewis was presented with a scrollable, full text version of the PlayStation Terms that existed at the time. *See id.* at 6-7. The PlayStation Terms were also presented to Lewis when he created accounts through the PlayStation website; there, PlayStation users are shown a hyperlink to the Terms. *See id.* at 8-9. Whether creating a PlayStation account on the PS4 or on the PlayStation website, a user must accept the PlayStation Terms to complete their account, and an account is in turn required to use PlayStation services and the PlayStation's third-party services. *See id.* at 5-8.

Near the beginning of the PlayStation Terms in the "About these Terms" section, section 1.4 states, "PLEASE CAREFULLY READ THE BINDING ARBITRATION CLAUSE AND CLASS ACTION WAIVER IN SECTION 14. IT AFFECTS HOW DISPUTES ARE RESOLVED BETWEEN YOU AND SIE (AND ITS CURRENT OR FORMER AFFILIATES, PARENTS, OR SUBSIDIARIES), AND INFORMS YOU OF YOUR OPT-OUT RIGHTS." Current PlayStation Terms [19-2] at 3. Section 14 is titled "Binding Individual Arbitration" and, among other things, states "[a]rbitration means that the Dispute will be resolved by a neutral arbitrator instead of in a court by a judge or jury," and that:

> The term "Dispute" means any dispute, claim, or controversy between you and Sony Interactive Entertainment LLC, or any of its current or former affiliates, including parents or subsidiaries, and any predecessor or successor entity to any of the foregoing, (collectively, "Sony Entities") regarding PlayStation Services or PlayStation Content, or the use of any PlayStation Devices or other devices sold by a Sony Entity to access PlayStation Content, whether based in contract, statute, regulation, ordinance, tort (including fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory, and includes the validity, enforceability or scope of this "BINDING INDIVIDUAL ARBITRATION" section (with the exception of the enforceability of the Class Action Waiver clause below). "Dispute" is to be given the broadest possible meaning that will be enforced.

*Id.* at 23. The PlayStation terms also provide that "[w]hen you use PlayStation Services or your Account to access Third-Party Services, these Terms and any applicable Usage Terms will govern your use of that Third-Party Service." *Id.* at 4. Just as with the SSLA, the PlayStation Terms convey that the FAA and the AAA Rules govern its interpretation, *id.* at 24-25, and that the PlayStation Terms provide an opportunity to opt-out of arbitration, *id.* at 23-24.

SIE presents evidence that Lewis created six PlayStation accounts, four on a PS4 and two on the PlayStation website. *See* Mem. [20] at 11-14; Horne Decl. [19-1] at 17-21. Each of those accounts were created in the same city in Mississippi where Lewis lives and are in some manner connected to the name "Gemarion Lewis," whether by the name on the account, the name in the associated email address, or the name in the associated billing details. *See* Horne Decl. [25] at 17-21 (unredacted; restricted). SIE points out that, across these accounts, Lewis accepted the PlayStation Terms in their January 2017, April 2018, April 2019 (thrice), October 2022, August 2023, March 2025, and April 2026 (twice) iterations.

Horne Decl. [19-1] at 17-21. Each account has also accepted either the PS4 SSLA or the PS4 and PS5 SSLA, meaning Lewis agreed to arbitrate any disputes with SIE, via versions of the SSLA and PlayStation Terms, at least twelve times; including as recently as two-and-a-half months before filing this lawsuit.[5] *Id.* Lewis has not contested any of this evidence of the existence of agreements to arbitrate,[6] and he also never opted-out of arbitration. *See* Horne Decl. [19-1] at 21.

Both the PlayStation Terms and PS4 SSLA contain choice-of-law provisions stating that California law governs, *see, e.g.*, Current PlayStation Terms [19-2] at

[5] The aforementioned accounting of versions of the PlayStation Terms Lewis has accepted adds up to ten. As the Court understands the SSLA acceptance-process based on SIE's Memorandum [20], the fact that Lewis has agreed to a PS4 SSLA on all six accounts and a PS5 SSLA on two accounts only necessitates one agreement per console but could include more. *See* Mem. [20] at 11-14. SIE has not alleged how many physical PS4 and PS5 consoles Lewis has signed-in to his PlayStation accounts on. So, at a minimum, he has accepted (either by accepting the SSLA himself or by using a console for which someone accepted a SSLA on his behalf) a PlayStation SSLA twice, once on a PS4 and once on a PS5. That makes a minimum of twelve times that Lewis agreed to arbitrate his disputes with SIE.

[6] SIE has also filed a Notice [26] that Lewis did not oppose its Motion [19] to Compel Arbitration and asserted that under Local Rule 7(b)(3)(E) and *Esch v. CMH Homes, Inc.*, 2024 WL 716054, at *3 n.4 (N.D. Miss. Feb. 20, 2024), this Court can grant the Motion [19] as unopposed as a non-dispositive motion. Dkt. [26] at 1-2; L. U. Civ. R. 26(a)(3) ("If a party fails to respond to any motion, other than a dispositive motion, within the time allotted, the court may grant the motion as unopposed."); *Esch*, 2024 WL 716054, at *3 n.4 (granting a motion to compel arbitration as unopposed in the alternative, after granting on the merits). As *Esch* notes, the Fifth Circuit does not appear to have decided whether a motion to compel arbitration is a non-dispositive motion, *Lee v. Plantation of La., LLC*, 454 F. App'x 358, 360 n.3 (5th Cir. 2011) (declining to decide), but the First and Third Circuits have concluded such motions are non-dispositive, *see V.I. Water & Power Auth. v. Gen. Elec. Int'l*, 561 F. App'x 131, 133-34 (3d Cir. 2014) (motions to compel arbitration are non-dispositive); *PowerShare, Inc. v. Syntel*, Inc., 597 F.3d 10, 14 (1st Cir. 2010) (same). A district court in the Second Circuit, however, concluded that they are dispositive motions, *ECOR Sols., Inc. v. Malcolm Pirnie, Inc.*, No. 02-CV-1103(GTE/DRH), 2009 WL 2424553, at *1 n.1 (N.D.N.Y. Jan. 21, 2009), *report and recommendation adopted*, No. 02-CV-1103 (NAM/DRH), 2009 WL 2424552 (N.D.N.Y. Aug. 5, 2009), and district and appellate courts in other circuits treat motions to compel arbitration similarly to summary judgment motions, which are dispositive motions, *see, e.g., Whittacker v. Roblox Corp. et al.*, No. 25-CV-02967-GPG-KAS, 2026 WL 2640984, at *1 (D. Colo. Sept. 2, 2026) (Tenth Circuit); *Angelilli v. Activision Blizzard, Inc.*, No. 23-CV-16566, 2025 WL 524276, at *3 (N.D. Ill. Feb. 18, 2025) (Seventh Circuit); *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215 (11th Cir. 2021) ("We treat motions to compel arbitration similarly to motions for summary judgment."). Given the split in authority and the lack of a clear statement from the Fifth Circuit, this Court declines to decide whether a motion to compel arbitration is a dispositive motion and accordingly proceeds to the merits rather than applying Local Rule 7(b)(3)(E) to grant the Motion [19] as unopposed.

26; Current PS4 SSLA [19-15] at 9, and those provisions have not been challenged by Lewis, so the Court will apply California law, *see Finley*, No. 1:25CV335-LG-BWR, 2025 WL 3764015, at *3 (citing *Edwards*, 888 F.3d at 745).

Under California law, there are four elements of contract formation: "(1) Parties capable of contracting; (2) Their consent; (3) A lawful object; and, (4) A sufficient cause or consideration." West's Ann. Cal. Civ. Code § 1550. Only the second element, mutual assent (consent), is at issue here. For mutual assent to an arbitration clause, California law demands that "a reasonably prudent Internet customer would be put on inquiry notice of the agreement's existence and contents." *In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932, 947 (N.D. Cal. 2021) (citations and internal quotation marks omitted). "On the internet, a manifestation of assent may be inferred from the consumer's actions on the website—including, for example, checking boxes and clicking buttons." *Weeks v. Interactive Life Forms, LLC*, 100 Cal. App. 5th 1077, 1084 (2024) (citations and internal quotation marks omitted). Courts enforce agreements to arbitrate when individuals are presented with terms and conditions and are required to click "I Agree" to manifest assent to those terms. *See, e.g.*, *Mackey v. Airbnb, Inc.*, 745 F. Supp. 3d 455, 461 (S.D. Miss. 2024) (applying California law).

Here, Lewis assented to the arbitration of any dispute he might bring against SIE at least twelve times (SSLA and PlayStation Terms), and to any dispute he might bring against third-party services accessed on a PlayStation platform at least ten times (PlayStation Terms). When Lewis repeatedly clicked "accept" on the

SSLA and PlayStation Terms on the PlayStation console, and "agree" on the PlayStation Terms on the PlayStation website, he was reasonably placed on inquiry notice of the arbitration agreements contained therein. *See, e.g., Orellana v. Roblox Corp.*, 769 F. Supp. 3d 1273, 1284-88 (M.D. Fla. 2025) (granting SIE's motion to compel arbitration as to plaintiffs that accepted the PlayStation Terms and were thus put on inquiry notice of the provision in a similar case (though applying Florida law, the *Orellana* Court noted that SIE asserted that Florida law does not conflict with California law for purposes of interpreting the arbitration provision of the PlayStation Terms. *See id.* at 1280.)).

Thus, the record contains unrebutted evidence that Lewis mutually assented to contracts with SIE several times, and that each of those contracts contained a binding arbitration provision. *See, e.g.*, Current PlayStation Terms [19-2] at 23-26; Current PS4 SSLA [19-15] at 7-8. And further, that the ten times he accepted the PlayStation Terms, he also agreed to arbitrate all disputes he has with the other Defendants, as third-party servicers, per those terms. *See, e.g.*, Current PlayStation Terms [19-2] at 4. To the extent Lewis attempts to preemptively assert in his Amended Complaint [4] that any contracts he entered with Defendants are unconscionable or are unenforceable contracts of adhesion, Am. Compl. [4] at 38, he has not borne his burden to establish their invalidity, *Parrott*, 167 F.4th at 734. By not responding to the Motion [19], Lewis simply has not offered any factual grounds to overcome the "strong presumption in favor of arbitration" under the FAA. *Id.* On these facts, the Court concludes that there is an agreement to arbitrate.

2. <u>There is a Valid Delegation Clause in both the PlayStation Terms and SSLA</u>

Under the FAA, parties can agree to arbitrate "gateway" questions of "arbitrability," "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr.*, 561 U.S. at 69. "When the parties' contract delegates the arbitrability question to an arbitrator . . . a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). Accordingly, "a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala*, 830 F.3d at 202. Language expressly delegating to an arbitrator the authority to determine the scope and enforceability of an arbitration agreement constitutes a valid delegation, *see Alkutkar v. Bumble Inc.*, No. 22-CV-00422-PJH, 2022 WL 4112360, at *8 (N.D. Cal. Sept. 8, 2022), *aff'd*, No. 24-6671, 2025 WL 2925296 (9th Cir. Oct. 15, 2025), as does express adoption of the AAA Rules, *Edwards*, 888 F.3d at 746 ("[E]xpress incorporation of the . . . AAA Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.") (citations omitted).

The previously adduced facts plainly demonstrate that a valid delegation clause exists here. The PS4 SSLA states "[a]rbitration means that the Dispute will be resolved by a neutral arbitrator instead of in a court by a judge or jury," and further that "[t]he term 'Dispute' . . . includes the validity, enforceability or scope of this [binding individual arbitration] Section 9." Current PS4 SSLA [19-15] at 7. The PlayStation Terms state "[a]rbitration means that the Dispute will be resolved

by a neutral arbitrator instead of in a court by a judge or jury," and that "[t]he term 'Dispute' . . . includes the validity, enforceability or scope of this 'BINDING INDIVIDUAL ARBITRATION' section." Current PlayStation Term [19-2] at 23. And both the PS4 SSLA and PlayStation Terms include provisions expressly incorporating the AAA Rules. Current PS4 SSLA [19-15] at 8; Current PlayStation Terms [19-2] at 24-25. All of these conditions constitute clear language delegating the scope and enforceability of their related arbitration agreements to the arbitrator, thus establishing valid delegation clauses. The Court, therefore, has "no power to decide the arbitrability issue," *Henry Schein*, 586 U.S. at 68, and must "refer the claim[s] to arbitration to allow the arbitrator to decide gateway arbitrability issues," *Kubala*, 830 F.3d at 202.

The *Kubala* test of: first, whether there is an agreement to arbitrate; and second, whether that agreement contains a valid delegation clause, has been answered in the affirmative as to both questions. Lewis' claims against SIE should be sent to arbitration. Under Section 3 of the FAA, if a court finds that an issue should be referred to arbitration, then the court "shall . . . stay the trial of the action until such arbitration has been had." 9 U.S.C. § 3. Because the Court finds agreements to arbitrate and valid delegation clauses encompass the disputes, the Court will stay this action as to all parties in the interests of judicial economy and fairness to the parties, pending the resolution of any arbitration.

III. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Sony Interactive Entertainment LLC's Motion [19] to Compel Arbitration and Stay Proceedings is **GRANTED**, and that Plaintiff Gemarion Lewis and Defendant SIE are directed to arbitration as to their dispute. Plaintiff and Defendant are further directed to institute the arbitration within thirty (30) days of the date of this Order. Plaintiff and Defendant will jointly update the Court as to the continued status of this matter every six (6) months and within thirty (30) days of the completion or dismissal of the arbitration. Upon completion of the arbitration, any remaining parties are permitted to move to reopen the case.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, this matter is **STAYED** and **ADMINISTRATIVELY CLOSED**.

**SO ORDERED**, this the 29th day of October, 2026.

s/ Halil Suleyman Ozerden
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE